IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MADHI COLLINS, : No. 3:24cv1571
:
        Plaintiff : (Judge Munley)
:
    v. :
:
CORRECTIONAL OFFICER KINER, :
et al., :
:
        Defendants :
............................................................................................................

## MEMORANDUM

Plaintiff Madhi Collins ("Collins"), an inmate housed at all relevant times at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill"), commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 27). Named as defendants are Correctional Officer Kiner, Sergeant Schaeffer, Lieutenant Snyder, and Correctional Officer Usher.

Presently pending is defendants' motion (Doc. 32) to partially dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion will be granted in part and denied in part.

I.  **Factual Background & Procedural History**

Collins alleges that, on September 27, 2022, he was involved in an altercation with another inmate near the education building at SCI-Camp Hill. (Doc. 27, Am. Compl. ¶ 9). He alleges that correctional officers responded to the incident and immediately deployed oleoresin capsicum ("OC") spray. (Id. ¶ 10). He states that the correctional officers "quickly brought the situation under control." (Id. ¶ 11). Collins asserts that he complied with orders to stop fighting, was handcuffed, and transported to medical to receive treatment for the effects of OC spray. (Id. ¶¶ 11-12).

After being evaluated and examined by medical staff, Collins was cleared to leave, and defendants escorted him to the Restricted Housing Unit ("RHU") with a spit mask over his head. (Id. ¶¶ 14-19). Collins alleges that the defendants participated in the escort as follows: Kiner held the tether attached to his handcuffs, Snyder was the supervising officer, Schaeffer operated the camera that recorded the escort to medical and to the RHU, and Usher was an escorting officer. (Id. ¶¶ 16-19). During this escort, Collins alleges that his shoelace was untied, and Defendant Kiner allegedly stepped on his shoelace, which caused the plaintiff to jerk and stop. (Id. ¶¶ 20-21). Defendant Kiner allegedly yelled at Collins to keep moving and the plaintiff told Kiner that he was stepping on his shoelace, which was causing him to jerk. (Id. ¶¶ 22-23). The

2

escort resumed and Defendant Kiner allegedly stepped on Collins's shoelace once more. (Id. ¶ 24). Collins allegedly requested to be able to tuck his shoelace into his shoe so Defendant Kiner would not step on the shoelace. (Id. ¶ 25). The escort resumed, and Defendant Kiner allegedly stepped on Collins's shoelace once more and yelled at the plaintiff. (Id. ¶¶ 26-27). Collins alleges that Defendant Kiner then slammed him between the wall and laundry bin, grabbed the plaintiff's ankles, pulled his legs, and caused him to fall face first on the ground. (Id. ¶¶ 28-29). Defendant Kiner then allegedly jumped on Collins and began punching him in the head and face and placed his elbows on the back of the plaintiff's neck. (Id. ¶¶ 31-32). Per Collins, Defendant Usher obtained leg shackles and placed them on the plaintiff's legs. (Id. ¶ 34). Collins asserts that he never posed a threat and thus Defendant Kiner used unnecessary force. (Id. ¶¶ 36-39).

Collins next alleges that Defendant Kiner fabricated a misconduct to "cover up" this altercation. (Id. ¶ 47). Collins appeared before a hearing examiner and requested video footage of the incident, but defendants allegedly failed to provide that footage. (Id. ¶¶ 48-49). Collins asserts that the misconduct charges were ultimately expunged. (Id. ¶¶ 50-51).

While housed in the RHU, Collins alleges that he attempted to file a grievance regarding the excessive use of force by Defendant Kiner. (Id. ¶ 52).

3

Collins maintains that he handed the grievance to a correctional officer, but the officer discarded the grievance. (Id. ¶¶ 53-59). Collins then refiled the grievance by placing it in the grievance box on his own. (Id. ¶ 57).

Defendants now move to partially dismiss the amended complaint asserting the following arguments: (1) Collins failed to establish a viable First Amendment retaliation claim against all defendants; (2) Collins failed to establish a viable Eighth Amendment excessive force claim against Defendants Schaeffer, Snyder, and Usher; and (3) Collins failed to establish a viable Eighth Amendment failure to intervene claim against Defendants Schaeffer, Snyder, and Usher.[1] (Doc. 33). Briefing on the motion to dismiss is complete and the motion is ripe for review.

## II.  Legal Standards

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) of the provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir.

---

[1] Defendants maintain that the amended complaint should only proceed on the Eighth Amendment excessive force claim against Defendant Kiner. (Doc. 33, at 1 n.1).

2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal pleading rules require the complaint to provide "the defendant notice of what the…claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130–31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a plausible claim for relief. Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); see also Twombly, 550 U.S.

5

at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

B.  Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or

laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III. Discussion

### A. Retaliation Claim

#### 1. Defendants Kiner, Schaeffer, Snyder, and Usher – Discarding a Grievance Claim

Collins brings a retaliation claim against a non-defendant correctional officer for discarding his grievance in an attempt to cover-up the alleged excessive use of force by Defendant Kiner. (Doc. 27, Am. Compl. ¶¶ 52-61, 65). This allegation fails to state a claim because the named defendants did not have any personal involvement in the retaliatory act.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (quoting Rode, 845 F.2d at 1207). In other words, a plaintiff must bring forth allegations demonstrating how each defendant played an "affirmative part" in the alleged constitutional deprivation. Rizzo v. Goode, 423 U.S. 362, 377 (1976). Furthermore, while liability under Section 1983 cannot be predicated on a respondeat superior basis and state actors typically "are liable only for their own unconstitutional conduct," there are "two general ways in which a

7

supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, 'a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." Id. However, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*).

Collins's amended complaint fails to allege that the named defendants had any personal involvement regarding the discarding of his grievance. Rather, per Collins, the alleged retaliatory act was committed by a non-defendant correctional officer, not the named defendants. (Doc. 27 ¶¶ 52-61). Accordingly, any purported retaliation claim against Defendants Kiner, Schaeffer, Snyder, and Usher based on the discarding of a grievance will be dismissed.

### 2. Defendant Kiner – Fabricated Misconduct Claim

Collins alleges that, on September 27, 2022, Defendant Kiner assaulted him during an escort to the RHU at SCI-Camp Hill. (Doc. 27 ¶¶ 16, 28-32). Collins states that after he was allegedly assaulted, Kiner issued a "fabricated misconduct... in an attempt to cover-up and justify the malicious assault on Plaintiff." (Id. ¶ 47).

To prevail on his retaliation claim, Collins must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citing Rauser v. Horn, 241 F.3d 330, 333–34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. Id. (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

Once a plaintiff has established that he was subjected to a retaliatory disciplinary measure, the burden shifts to the defendants to demonstrate by a preponderance of the evidence that they would have made the same penological decision absent the protected conduct. Rauser, 241 F.3d at 334. This determination requires the court to "evaluate 'the quantum of evidence'" in support of the misconduct "to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them." Watson, 834 F.3d at 426.

Collins appears to allege that, after the alleged assault, Defendant Kiner issued a false misconduct report against him in an attempt to cover-up the fact that it was Kiner who was the real aggressor. However, the filing of an alleged false misconduct report against an inmate does not amount to a deprivation of a constitutional right. See Freeman v. Rideout, 808 F.2d 949 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988); Flanagan v. Shively, 783 F. Supp. 922, 931-32 (M.D. Pa.), aff'd 980 F.2d 722 (3d Cir. 1992), cert. denied, 510 U.S. 829 (1993). Because Collins has not demonstrated that he engaged in constitutionally protected conduct or was deprived of a constitutional right, he cannot establish the first element of a retaliation claim.

Even if Collins could establish that he was engaged in constitutionally protected activity, he has not alleged that he endured an adverse action. Collins

avers that prison officials expunged Kiner's misconduct report. (Doc. 27, Am. Compl. ¶ 51). Absent the imposition of a penalty, the Third Circuit Court of Appeals has explicitly held that a correctional officer's filing of a false misconduct charge that is subsequently dismissed fails to rise to the level of an adverse action. Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011); cf. Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir. 2009) ("A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." (citation omitted)). Thus, Collins does not state a plausible claim that he suffered an adverse action from the issuance of the allegedly false misconduct.

Because Collins failed to plead an adverse action—and, thus, has not set forth a claim for retaliation—the court need not reach the third prong of a claim for retaliation, and makes no determination as to whether Collins has pled the existence of a causal link. The court will dismiss Collins' retaliation claim based on the alleged issuance of a false misconduct.

B.   Excessive Force Claim against Schaeffer, Snyder, and Usher

As discussed above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode, 845 F.2d at 1207. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence; however, allegations of knowledge and acquiescence must be made with appropriate particularity." Id. Additionally, a

11

plaintiff must show that "some affirmative conduct by the supervisor played a role in the discrimination." Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990); see also Rizzo, 423 U.S. 377 (supervising officials do not violate the constitutional rights of the victims unless they have played an "affirmative part" in the misconduct).

Collins failed to allege that Defendants Schaeffer, Snyder, and Usher had any personal involvement in the alleged excessive use of force. As set forth in the amended complaint, Collins alleges that only Defendant Kiner used excessive force against him. (Doc. 27, Am. Compl. ¶¶ 28-32, 37-39). He admits that he "has never asserted any excessive use of force against Defendants Snyder, Schaeffer and Usher." (Doc. 37 at 4; see generally Doc. 27). Accordingly, defendants' motion to dismiss the excessive force claim against Schaeffer, Snyder, and Usher will be granted based on lack of personal involvement.

C.  Failure to Intervene Claim against Schaeffer, Snyder, and Usher

Collins next asserts that Defendants Schaeffer, Snyder, and Usher failed to intervene on his behalf during the assault. "[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to

intervene and simply refused to do so." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).

In the amended complaint, Collins alleges that Defendants Schaeffer, Snyder, and Usher witnessed the attack and did nothing to stop it from occurring. (Doc. 27, Am. Compl. ¶¶ 40-46). Construing these allegations as true, the court concludes that Collins alleges a plausible failure to intervene claim against these defendants. See Abney v. Younker, No. 1:13-cv-1418, 2019 WL 7812383, at *6 (M.D. Pa. Oct. 3, 2019) ("[c]ourts have held correctional officers liable for a failure to intervene when such officers were present at the time of the attack and did not intervene, stop, or report the incident."). The court will deny defendants' motion to dismiss the failure to intervene claim against Schaeffer, Snyder, and Usher.

## IV.  Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the court must grant Collins leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). The following claims are factually and legally flawed: 1) the retaliation claim against all named defendants for discarding the plaintiff's grievance; 2) the retaliation claim against Defendant Kiner for the alleged fabrication of a misconduct; and 3) the excessive force claim against Defendants Schaeffer, Snyder, and Usher. Granting Collins leave to file a

second amended complaint on these claims would be both futile and inequitable. See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (where an inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

## V. Conclusion

Consistent with the foregoing, defendants' motion (Doc. 32) to partially dismiss the amended complaint will be granted in part and denied in part. The First Amendment retaliation claims against all named defendants will be dismissed, that is: 1) the retaliation claim against all named defendants for discarding the plaintiff's grievance; and 2) the retaliation claim against Defendant Kiner for the alleged fabrication of a misconduct. The Eighth Amendment excessive force claim against Defendants Schaeffer, Snyder, and Usher will also be dismissed. Collins will be permitted to proceed on the Eighth Amendment failure to intervene claim against Defendants Schaeffer, Snyder, and Usher and the Eighth Amendment excessive force claim against Defendant Kiner. An appropriate order follows.

Date: 5/28/25

JUDGE JULIA K. MUNLEY
United States District Court